Adam D. Kamenstein (SBN 225921)
*adam.kamenstein@adkfirm.com*
Alec Johnson (SBN 270960)
*alec.johnson@adkfirm.com*
Jonathan K. Ramler (SBN 362590)
*jack.ramler@adkfirm.com*
ADAMS, DUERK & KAMENSTEIN LLP
445 S. Figueroa Street, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 408-4085

Attorneys for Defendants
County of Los Angeles,
Los Angeles County Sheriff's Department,
and Robert Luna

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXIS LEMUS, an individual<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a public entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; ROBERT G. LUNA, in his individual and official capacities; THOMAS GIANDOMENICO, individually and in his official capacity as a Commander of the Los Angeles County Sheriff's Department; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:26-cv-09259<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>Complaint Filed: Jul. 16, 2026<br><br>Date of Removal: Aug. 19, 2026 |

**TO THE HONORABLE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on ___________________ at ________, or as soon thereafter as this matter may be heard before the Honorable ___________________in Courtroom ___ of the U.S. District Court for the Central District of California, located ____________________________________, Defendants Los Angeles County ("County"), the Los Angeles County Sheriff's Department ("LASD"), and Robert Luna will move to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(6) and 81(c)(2)(C) of the Federal Rules of Civil Procedure. Pursuant to Local Rule 7-3, Defendants so move following a conference of counsel, which took place on August 21, 2026. *See* Declaration Jonathan K. Ramler in support of Defendants' Motion to Dismiss ("Ramler Decl.").

This motion is based on the Notice of Motion, the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, the Ramler Declaration, the operative complaint, all other filings in this matter, and upon all argument that this Court may allow at the time of hearing the motion.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………….iv
MEMORANDUM OF POINTS AND AUTHORITIES…………………………….1
I. INTRODUCTION…………………………………………………………...1
II. FACTUAL BACKGROUND……………………………………………….2
III. LEGAL STANDARD………………………………………………………3
IV. ARGUMENT………………………………………………………………4
A. Plaintiff's Wrongful Death Negligence Claim Is Precluded by The California Workers' Compensation Act………………………………………………4
1. The Fraudulent Concealment Exception Does Not Apply. ................................5
2. An Exception for Willful Misconduct Does Not Apply. ...................................6
3. The Dual Capacity Doctrine Does Not Apply. ..................................................7
B. Plaintiff's Allegations Do Not Support Claims under Federal Law…………...8
1. The State-Created Danger Doctrine is Unsupported. .......................................9
2. Plaintiff's Allegations Are Insufficient to Support a *Monell* Claim…………..13
a. The allegations do not reflect deprivations of constitutional rights………...14
b. The allegations do not identify policies amounting to deliberate indifference…………………………………………………………………....15
3. The Claims Premised on Familial Association Do Not Implicate an Enforceable Due Process Right. ........................................................................…17
4. Qualified Immunity Bars any Imposition of Liability on Luna……………….18
V. CONCLUSION……………………………………………………………..20
CERTIFICATE OF COMPLIANCE ………………………………………….21
CERTIFICATE OF SERVICE…………………………………………………..22

# TABLE OF AUTHORITIES

## Cases

*AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) .......... 3
*Arendell v. Auto Parts Club, Inc.*, 29 Cal.App.4th 1261 (1994) .......... 7
*Arriaga v. County of Alameda*, 9 Cal. 4th 1055 (1995) .......... 5
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3
*Ashdown v. Ameron Internat. Corp.*, 83 Cal.App.4th 868 (2000) .......... 8
*Bd. of Cnty. of Comm'rs v. Brown*, 520 U.S. 397 (1997) .......... 15
*Behrens v. Fayette Manufacturing Co.*, 4 Cal.App.4th 1567 (1992) .......... 8
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3
*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) .......... 16
*Chambers v. Sanders*, 63 F.4th 1092 (6th Cir. 2023) .......... 18
*City of Canton v. Harris*, 489 U.S. 378 (1989) .......... 13
*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) .......... 8, 9
*Coley v. Swift Transportation Co. of Arizona, LLC*, No. ED-cv-1901105-CJC-SPx, 2019 WL 7841855 (C.D. Cal. Aug. 7, 2019) .......... 5
*Collins v. City of Harker Heights*, 503 U.S. 115 (1992) .......... 9, 12, 14, 19
*Connick v. Thompson*, 563 U.S. 51 (2011) .......... 13, 14
*Daniels v. Williams*, 474 U.S. 327 (1986) .......... 9
*Delaney v. Baker*, 20 Cal.4th 23 (1999) .......... 7
*Desrosiers v. Garcia*, No. 26-cv-02111-BAS-DEB, 2026 WL 1483497 (S.D. Cal. May 27, 2026) .......... 11
*Dodge v. Evergreen Sch. Dist. No. 114*, 56 F.4th 767 (9th Cir. 2022) .......... 17
*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) .......... 13
*Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025) .......... 18, 19
*Evans v. Arizona Cardinals Football Club, LLC*, 262 F. Supp.3d 935 (N.D. Cal. 2017) .......... 5
*Fermino v. Fedco, Inc.*, 7 Cal.4th 701 (1994) .......... 6, 7
*Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018) .......... 19
*Garcia v. Benov*, 715 F. Supp.2d 974 (C.D. Cal. 2009) .......... 18

*Gordon v. Cnty. of Orange*,
6 F.4th 961 (9th Cir. 2021) ....................16
*J.M. by and Through Rodriguez v. Cnty of Stanislaus*,
No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725 (E.D. Cal. Nov. 7, 2018) ....................16
Johns-Manville Products Corp. v. Super. Ct.,
27 Cal.3d 465 (1980) ....................6
*Jones v. Kaiser Industries Corp.*, 43 Cal.3d 552 (1987) ....................8
*Kisela v. Hughes*,
584 U.S. 100 (2018) ....................19
*L.W. v. Grubbs*,
92 F.3d 894 (9th Cir.1996) ....................12
*Lazo v. Mobil Oil Ref. Corp.*,
No. CV-14-1072-ABC-JCX, 2014 WL 12596424 (C.D. Cal. May 30, 2014) ....................6
*Lomibao v. Baxter Healthcare Corp.*,
No. CV-13-1789-PSG-MRWx, 2013 WL 12138733 (C.D. Cal. Aug. 5, 2013) ....................7
*Lucas v. Hillenbrand*,
No. CV 25-24-BU-DWM, 2026 WL 1078949 (D. Mont. Apr. 21, 2026) ....................10
*Marsh v. Cnty. of San Diego*,
680 F.3d 1148 (9th Cir. 2012) ....................14, 15
*Martinez v. City of Clovis*,
943 F.3d 1260 (9th Cir. 2019) ....................9
*Mason v. Lake Dolores Group*,
117 Cal.App.4th 822 (2004) ....................4
*Mullenix v. Luna*,
577 U.S. 7 (2015) ....................18
*Munger v. City of Glasgow Police Dep't*,
227 F.3d 1082 (9th Cir. 2000) .................... 10
*Murguia v. Langdon*,
61 F.4th 1096 (9th Cir. 2023) ....................9
*Ogbechie v. Covarrubias*,
No. 18-cv-00121-EJD, 2020 WL 3103789 (N.D. Cal. June 11, 2020) ....................10
*Olejnik v. England*,
147 F. Supp. 3d 763 (W.D. Wis. 2015) ....................15
*Ottaviano v. City of Los Angeles*,
No. cv-22-2384-DMG-AGRx, 2023 WL 8291795 (C.D. Cal. Oct. 26, 2023) ....................10
*Patel v. Kent Sch. Dist.*,
648 F.3d 965 (9th Cir. 2011) ....................11
*Pauluk v. Savage*,
836 F.3d 1117 (9th Cir. 2016) ....................9
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ....................16
*Puente v. City of Phoenix*,
123 F.4th 1035 (9th Cir. 2024) ....................17
*Regino v. Staley*,
133 F. 4th 951 (9th Cir. 2025) ....................18
*Rocin v. California*,
342 U.S. 165 (1952) ....................15
*Sacramento Homeless Union v. City of Sacramento*,
115 F.4th 1149 (9th Cir. 2024) ....................11
*Schmier v. U.S. Ct. of Appeals for Ninth Cir.*,
279 F.3d 817 (9th Cir. 2002) ....................20
*Scovill v. Siemens Mobility, Inc.*,
No. 2:25-CV-01081-TLN-SCR, 2026 WL 2225720 (E.D. Cal. Aug. 3, 2026) ....................6
*Silas v. Arden*,
213 Cal.App.4th 75 (2012) ....................6

*Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023) .......... 11
*Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987) .......... 17
*Stalnaker v. Boeing Co.*, 186 Cal.App.3d 1291 (1986) .......... 6
*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .......... 3
*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) .......... 16
*Washington v. Glucksberg*, 521 U.S. 702 (1997) .......... 1, 18, 19
*Wright v. State of California*, 233 Cal.App.4th 1218 (2015) .......... 4

**Statutes**

42 U.S.C. § 1983 .......... 4, 8, 9, 18
Cal. Lab. Code § 3206(b)(3) .......... 8
Cal. Lab. Code § 3600(a) .......... 4
Cal. Lab. Code § 3602(b) .......... 6
Cal. Lab. Code § 3602(b)(1) .......... 5
Cal. Lab. Code, § 3600 et seq. .......... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On July 18, 2025, LASD Detective Victor Lemus, a member of LASD's Arson/Explosives Detail, tragically died after an accidental grenade explosion on LASD's premises. Complaint, ¶¶ 1, 46–47 (Dkt. No. 1, Ex. 1 to Declaration of Alec Johnson). Plaintiff Alexis Lemus, a child of the deceased, subsequently filed this action, alleging two causes of action against Defendants: (1) wrongful death negligence under state law, and (2) civil rights violations under federal law. But the facts alleged in the Complaint do not support either Plaintiff's state-law negligence claims or her federal civil-rights claims.

As to Plaintiff's first cause of action, Plaintiff's negligence claims are barred entirely by The California Workers' Compensation Act, Cal. Lab. Code, § 3600 *et seq*., and the exceptions cited by Plaintiff do not apply. Likewise, Plaintiff's second cause of action, alleging federal civil-rights claims, may not be premised on mere negligence, and Plaintiff's reliance on the state-created danger doctrine is unavailing. Furthermore, the County and LASD (collectively "the municipal defendants") are not liable under a *Monell* theory because there are no underlying constitutional deprivations and Plaintiff has not identified actual unconstitutional polices. In addition, Plaintiff's claim to a loss of familial association has been undercut by the Supreme Court's ruling in *Washington v. Glucksberg*, 521 U.S. 702 (1997), which has overruled Ninth Circuit authority recognizing a child's right to be free from indirect interference with her companionship with a parent. Finally, Defendant Luna is entitled to qualified immunity from suit because: (1) no analogous case or rule has "clearly established" that municipal officers would be liable for a state-created danger under the facts Plaintiff alleged; and (2) Luna could not have known that his conduct violated Plaintiff's familial association rights.

As the Complaint's deficiencies are legal, and not the result of mere factual deficiencies, any amendment would be futile. Accordingly, Defendants ask that the Court dismiss Plaintiff's claims with prejudice.

## II. FACTUAL BACKGROUND

In June 2024, LASD transferred Detective Lemus from the K-9 SWAT unit to the Arson/Explosives Detail ("AED"). Complaint, ¶¶ 46–47. LASD then scheduled Detective Lemus to train at the FBI's Hazardous Devices School in Alabama ("HDS") in October 2025. *Id.*, ¶ 51. On July 17, 2025, AED personnel Joshua Kelley-Eklund and William Osborn responded to a report of two hand grenades found in an apartment building in Santa Monica. *Id.*, ¶ 54. Per the Complaint, Kelley-Eklund and Osborn examined the grenades with an "unreliable" x-ray device. *Id.*, ¶ 55. The device "produced a false-negative image leading personnel to conclude, erroneously, that the grenades were inert." *Id.* Only after LASD personnel believed the grenades to be inert did they transfer the items to the Special Enforcement Bureau ("SEB") facility, where AEB personnel were stationed. *Id.*, ¶ 56.

Plaintiff alleges that on the following day, LASD directed Detectives Lemus, Kelley-Eklund, and Osborn to report to the SEB facility to support the filming of a music video. *Id.*, ¶ 57. Plaintiff does not allege that LASD issued any other employment directive that day. After their support task was completed, Detective Lemus and his more experienced colleagues "turned to the grenades," which the other detectives used "as a training tool and demonstration for Detective Lemus[,]" believing the grenades to be inert. *Id.*, ¶¶ 58–59. The prior determination by Kelley-Eklund and Osborn was mistaken, however, and the grenades exploded, killing all three detectives. *Id.*, ¶ 61.

In the wake of the "Kobe Bryant Act," LASD had "adopted a formal policy prohibiting" its officers from taking photographs of dead bodies. *Id.*, ¶ 70. Moreover, while campaigning for Sheriff in 2022, Defendant Luna avowed that such death photographs were "not acceptable under any circumstances." *Id.*, ¶ 71. Nevertheless, Plaintiff alleges that Defendant Thomas Giandomenico, an LASD Commander in July 2025, photographed the body of Victor Lemus. *Id.*, ¶ 69. Plaintiff does not allege that the photograph was shared with the public or media.

///

Plaintiff claims that her father's death was "because the County of Los Angeles and its Sheriff's Department have . . . put money before their people and place [sic] unqualified incompetent individuals in supervisory roles." Complaint, ¶ 2. Plaintiff alleges that this wrongful allocation of resources began when LASD restructured the AED into the SEB, allegedly for "cost savings." *Id.*, ¶¶ 25–26. Plaintiff also alleges that the AED was improperly equipped, with no proper disposal facility, obsolete equipment, and no written procedures unique to LASD. *Id.*, ¶¶ 28–31. Further, Plaintiff asserts that LASD inadequately trains AED technicians. *Id.*, ¶ 32. However, the only school that certifies bomb technicians is the FBI's Hazardous Devices School in Alabama ("HDS"), and LASD "policy and practice" dictated that AED employees who had not completed the HDS course were forbidden to be "in the immediate presence of live explosive devices." *Id.*, ¶¶ 32, 48.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant has acted unlawfully." *Id.* The plausibility standard requires a factual showing of more than a "sheer possibility" of unlawful action or than conduct "merely consistent with" liability. *Id.* Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the factual allegations "must plausibly suggest an entitlement to relief so that the expense of discovery and continued litigation is not unfair." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr* and applying the rule to *Monell* claims).

///

///

## IV. ARGUMENT

Plaintiff's Complaint fails to allege facts permitting the inference of plausible claims for relief. First, the California workers' compensation exclusivity rule categorically bars actions at law, absent narrow exceptions, which do not apply to Plaintiff's state-law negligence claim. Second, federal civil-rights actions under 42 U.S.C. § 1983 do not cover mere negligence. Nor can *Monell* liability apply to municipalities absent deprivations of cognizable constitutional rights and extant unconstitutional policies that cause such deprivations with deliberate indifference. Moreover, Plaintiff's federal claim to a loss of familial association fails independently because it relies on precedent undermined by subsequent Supreme Court precedent. Finally, Defendant Luna is entitled to qualified immunity, as none of his alleged conduct amounts to clearly established violations of constitutional rights. Consequently, Luna and the municipal defendants are entitled to dismissal of all claims against them with prejudice.

### A. Plaintiff's Wrongful Death Negligence Claim Is Precluded by The California Workers' Compensation Act.

Plaintiff's First Cause of Action for negligent wrongful death is barred because California's workers-compensation regime preempts and excludes all civil actions, absent narrow exceptions. "California's Workers' Compensation Act (Labor Code, § 3600 et seq.) provides an employee's *exclusive* remedy against his or her employer for injuries arising out of and in the course of employment." *Wright v. State of California*, 233 Cal.App.4th 1218, 1229 (2015) (emphasis added). *See also* Cal. Lab. Code § 3600(a) (limiting liability for workplace injury or death, with few exceptions, to workers' compensation proceedings, "in lieu of any other liability whatsoever to any person"). For the exclusivity rule to apply, the employee injury must (1) occur in the course of the employment, and (2) arise out of the employment. *See Mason v. Lake Dolores Group*, 117 Cal.App.4th 822, 833 (2004).

///

As alleged in the Complaint, Victor Lemus's death occurred in the course of his employment with the LASD and arose out of his employment. Indeed, the Complaint notes that Victor Lemus was using or observing an explosive in a training demonstration on LASD premises, in keeping with his employment posting with the AED. Complaint, ¶¶ 11, 57–59. Accordingly, the worker's compensation exclusivity rule plainly applies here. *See Arriaga v. County of Alameda*, 9 Cal. 4th 1055, 1060 (1995) ("[W]hen a complaint affirmatively alleges facts indicating that the [Workers' Compensation] Act applies, no civil action will lie, and the complaint is subject to . . . [dismissal] unless it states additional facts that negate application of the exclusive remedy rule.").

However, Plaintiff attempts to negate the exclusivity rule by asserting that three recognized exceptions under state law apply: (1) fraudulent concealment, (2) willful misconduct, and (3) the dual capacity doctrine. Complaint, ¶¶ 74–77. But none of these theories apply to the facts alleged in the Complaint. Plaintiff's state-law claims must therefore be dismissed. *See Coley v. Swift Transportation Co. of Arizona, LLC*, No. ED-cv-1901105-CJC-SPx, 2019 WL 7841855, at *3 (C.D. Cal. Aug. 7, 2019) (dismissing negligence claims due to workers' compensation exclusivity, where no exceptions applied).

**1. The Fraudulent Concealment Exception Does Not Apply.**

The California Labor Code provides that the exclusivity rule does not apply "[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the *injury* and its connection with the employment . . . the employer's liability shall be limited to those damages proximately caused by the aggravation." Cal. Lab. Code § 3602(b)(1) (emphasis added). This exception is "extremely limited." *Evans v. Arizona Cardinals Football Club, LLC*, 262 F. Supp.3d 935, 939 (N.D. Cal. 2017). To recover for fraudulent concealment, a plaintiff must prove that "(1) the employer knew of the plaintiff's work-related *injury*; (2) the employer concealed the knowledge from the plaintiff; and (3) the injury was aggravated as a result of such concealment. If any one of these conditions is lacking the exception does not apply and the employer is entitled to

judgment in its favor." *Silas v. Arden*, 213 Cal.App.4th 75, 91 (2012) (emphasis added) (internal citations omitted).

Here, Plaintiff does not allege that Victor Lemus's *injury* was concealed. Rather, Plaintiff asserts that Defendants concealed the existence and magnitude of the *hazards* to which Victor Lemus was exposed. Complaint, ¶ 75. But this theory of fraudulent concealment is contradicted by caselaw. *See, e.g., Johns-Manville*, 27 Cal.3d 465 at 473–474 (1980) (synthesizing the rule that workers' compensation is "the exclusive remedy for injuries suffered in a case in which the employer concealed the dangers inherent in the material the employees were required to handle"); *Stalnaker v. Boeing Co.*, 186 Cal.App.3d 1291, 1300 (1986) (rejecting plaintiff's argument that employer's creation of dangerous conditions amounting to "substantial death or certainty" of death or injury constituted an exception to the exclusivity rule). As such, the fraudulent concealment exception simply does not apply here. *See Lazo v. Mobil Oil Ref. Corp.*, No. CV-14-1072-ABC-JCX, 2014 WL 12596424, at *3 (C.D. Cal. May 30, 2014) (dismissing complaint pleading fraudulent concealment on the grounds that plaintiff did not satisfy the knowledge element because "[k]nowledge of risk does not equate to knowledge of injury"); *Scovill v. Siemens Mobility, Inc.*, No. 2:25-CV-01081-TLN-SCR, 2026 WL 2225720, at *3–4 (E.D. Cal. Aug. 3, 2026) (dismissing negligence claim on the basis of workers' compensation exclusivity where failure to allege employer's knowledge of employee's work-related injuries defeated employee's fraudulent concealment theory).

**2. An Exception for Willful Misconduct Does Not Apply.**

Plaintiff further seeks to avoid the exclusivity rule by asserting an unenumerated exception that Defendants "acted in capacities beyond that of employer." Complaint, ¶ 77. While the statutory exceptions in § 3602(b) are not exclusive, the California Supreme Court established a specific tripartite classification to determine whether a novel situation warrants an exception. *See Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713–14 (1994). The exclusivity rule controls where employers are without fault, negligent, reckless or even intentional in causing harm, so long as the employer action is within ordinary employer

action. *Id.* A separate civil action is only permissible where *intentional* employer misconduct exceeds the "boundaries of the compensation bargain." *Id.* at 714. The Complaint, however, describes neither intentional misconduct nor conduct beyond the behavior of the compensation bargain.

To merit an exception to the exclusivity rule, vaguely sinister allegations of intent are not enough. *Id.* at 717. Instead, Plaintiff must allege "that the employer acted deliberately with the specific intent to injure the employee." *Arendell v. Auto Parts Club, Inc.*, 29 Cal.App.4th 1261, 1265 (1994) (quotations omitted) (emphasis added). Plaintiff's allegations here, however, are that Defendants' conduct included "deliberate indifference" to "known, documented, and reported safety risks," thereby constituting an exception to the exclusivity rule. Complaint, ¶ 77. But reckless conduct is not "specific intent to injure." *See Delaney v. Baker*, 20 Cal.4th 23, 31–32 (1999) (defining recklessness as a "conscious choice of a course of action with knowledge of the serious danger to others involved in it.") (quotation and alteration omitted). Without specific intent, Plaintiff's allegations *cannot* support this exception to the exclusivity rule.

Because the Complaint does not, and cannot, allege that Defendants acted with specific, criminal intent to injure Victor Lemus by violence and coercion, the alleged conduct cannot fit within *Fermino's* "catch-all" category. *See Fermino*, 7 Cal.4th at 723 n. 7 (requiring showing of intentional criminal acts, made with violation and coercion, to establish conduct beyond the boundaries of the compensation bargain); *Lomibao v. Baxter Healthcare Corp.*, No. CV-13-1789-PSG-MRWx, 2013 WL 12138733, at *4 (C.D. Cal. Aug. 5, 2013) (dismissing claim for willful and serious misconduct where employer was cited by CAL/OSHA for the harm that caused employee's injuries, but such regulatory misconduct did not rise to the level of "physical force," *citing Fermino*).

**3. The Dual Capacity Doctrine Does Not Apply.**

While Plaintiff also cites to the dual capacity doctrine, this doctrine has been largely been abrogated. *See* Cal. Lab. Code § 3602(a) ("The fact that either the employee or the employer also occupied another or dual capacity . . . at the time of [] the

employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer."). As a result, "the dual capacity exception . . . has been limited to the narrow factual circumstances presented where the employee's injury was caused by the employer's product . . . provided . . . by an independent third person who obtained the product from the employer for valuable consideration." *Ashdown v. Ameron Internat. Corp.*, 83 Cal.App.4th 868, 876 (2000). *See also Behrens v. Fayette Manufacturing Co.*, 4 Cal.App.4th 1567, 1574–75 (1992) (construing § 3206(b)(3) to limit exception to circumstances in which employee is consumer).

The Complaint does not allege facts that would meet this narrow exception because there is no allegation that Victor Lemus was a consumer of a product sold by Defendants. Rather Plaintiff alleges that Lemus was killed because of a "dangerous condition," in a "dangerous public facility[,]" "owned and operated" by the entity Defendants and that the public facility rendered LASD's actions as "capacities beyond that of employer." Complaint, ¶¶ 77, 84. But California law recognizes a "well-established rule that an employee cannot sue his employer for injuries resulting from the employer's failure to comply with [their] duties as a landowner or to provide a safe place to work." *Jones v. Kaiser Industries Corp.*, 43 Cal.3d 552, 561 (1987). In sum, the dual capacity doctrine has been largely repealed, and the limited exception to the repeal does not include injuries sustained by dangerous conditions on the employer's premises.

### B. Plaintiff's Allegations Do Not Support Claims under Federal Law.

The Complaint's second cause of action for liability under 42 U.S.C. § 1983 attempts to extend Plaintiff's negligence theory to support constitutional violations. Complaint, ¶ 88. But the Constitution is not a "font of tort law" supplanting traditional regulation of "liability for injuries that attend living together in society." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "To hold that injury caused by [lack of due care] is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Daniels v. Williams*, 474 U.S.

327, 332 (1986); *see also Lewis*, 523 U.S. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Here, the Complaint alleges that Luna and the Doe Defendants assigned Victor Lemus to bomb-squad duties, required him to work with faulty equipment, and permitted him to work with ordnance not "reliably rendered safe." *Id.*, ¶¶ 91. The County is alleged to have maintained polices of defunding the AED, assigning untrained personnel to bomb squad duties, and failing to train such personnel adequately. *Id.*, ¶ 93. But these allegations amount to negligence at most. *See Collins v. City of Harker Heights*, 503 U.S. 115, 117 (1992) (holding that the widow of a municipal employee did not have a viable § 1983 claim for her husband, who was fatally injured because the city "customarily failed to train or warn its employees about known hazards in the workplace").

Thus, Defendants' allocation of resources and personnel within departments here, as well as their training regimes and timelines, are not the proper subjects of constitutional litigation. Plaintiff's theories to the contrary are unavailing. Neither the state-created danger doctrine nor allegations of *Monell* liability suffice to erase the Supreme Court's bar on applying constitutional law to common law torts.

**1. The State-Created Danger Doctrine is Unsupported.**

Plaintiff's reliance on the state-created danger doctrine to create a constitutional violation here is unsupported. The doctrine permits liability for failing to protect a person "when the state actor affirmatively and with deliberate indifference placed that person in danger." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016). This exception has two requirements. First, state-created danger "applies only where there is affirmative conduct on the part of the state in placing the plaintiff in danger. Second, the exception applies only where the state acts with deliberate indifference to a known or obvious danger." *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (internal quotations omitted). The first requirement requires a plaintiff to show that the defendants' "affirmative actions created or exposed [him] to an actual, particularized danger that [he] would not otherwise have faced." *Id.* (quoting *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019)

(alterations in original)). Thus the key inquiry is whether the defendant's affirmative actions put the plaintiff in a more dangerous position than before those affirmative actions occurred. *See Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000).

Here, Plaintiff alleges that Defendant Luna and the DOE command staff transferred Victor Lemus into the bomb squad, failed to train him adequately, failed to provide him with reliable equipment, failed to provide him with experienced colleagues, and failed to render ordnance safe. Complaint, ¶ 91. On the date of Victor Lemus's death, an unspecified subject directed Lemus and his colleagues to support the filming of a music video but is not alleged to have directed any work with explosives. *Id.*, ¶ 57. The Complaint's artful active verbs attempt to characterize Defendants' inaction as affirmative acts. *See, e.g, id.*, ¶ 91 (describing LASD's retention of old equipment as "require[ing] him to work with obsolete and unreliable equipment"). *Cf. Ogbechie v. Covarrubias*, No. 18-cv-00121-EJD, 2020 WL 3103789, at *7 (N.D. Cal. June 11, 2020) (finding no affirmative act where failure to act may have been dereliction of duty but did not create an actual, particularized danger). But state-created danger demands true affirmative acts alone. *See Lucas v. Hillenbrand*, No. CV 25-24-BU-DWM, 2026 WL 1078949, at *13 (D. Mont. Apr. 21, 2026) ("[W]hen determining whether a plaintiff was left in a worse position, courts consider an alternative reality where the state had 'not acted at all,' not an alternative reality of additional state action.").

The remaining affirmative act, LASD's purported original sin, was the transfer of Victor Lemus from K-9 SWAT to AED more than a year prior to the subject incident. This act is so far removed from Victor Lemus's injury that the transfer can hardly be said to have *placed* him in a more dangerous position than he would have been on in K-9 SWAT or to have foreseeably *created* the danger of the injury later suffered. *See Ottaviano v. City of Los Angeles*, No. cv-22-2384-DMG-AGRx, 2023 WL 8291795, at *2 (C.D. Cal. Oct. 26, 2023) (dismissing state-related danger claim where allegations failed to allege a causal nexus between officers' threats to individual and that individual caused

harm to a third-party). The transfer is also too general to bear the weight of a constitutional tort. *See Desrosiers v. Garcia*, No. 26-cv-02111-BAS-DEB, 2026 WL 1483497, at *6 (S.D. Cal. May 27, 2026) (dismissing state created danger claim where complaint did not allege "that any particular Defendant ordered Plaintiff to conduct any specific hazardous task").

Moreover, even if the alleged failure to maintain proper training and equipment contained some kernel of affirmative act, the injury created would not have been particularized to Victor Lemus. "A danger is 'particularized' if it is directed at a specific victim." *Sinclair v. City of Seattle*, 61 F.4th 674, 682 (9th Cir. 2023). *See id.* (finding that danger affecting all visitors to an area equally was too general to constitute state-created danger). But maintenance of old equipment and an insufficient training regime did not direct the danger of an explosion at a specific victim. On the contrary, the alleged training failures led to AED personnel driving the grenades in an ordinary vehicle on "busy public streets." Complaint, ¶¶ 55–56. Joining the public in the zone of danger would have been the entire AED and anyone near the blast radius of the grenade. In short, there was no action LASD took directed at a specific victim or specific group of victims, and thus no particularized danger. Without any affirmative act creating danger particularized to a specific victim, LASD cannot have violated a constitutional right. *See Sacramento Homeless Union v. City of Sacramento*, 115 F.4th 1149, 1154 (9th Cir. 2024) (concluding that district court's application state-created danger doctrine was wrong because municipality did not create the dangerous element of heat that caused the alleged harm and the danger was not particularized because clearing homeless encampments affected all persons equally).

Plaintiff's allegations also fail to establish that Defendants were deliberately indifferent to a known or obvious danger. Deliberate indifference requires a culpable mental state higher than gross negligence. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). "The state actor must "recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.*

(cleaned up) (quoting *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir.1996)). The actor "knows that something *is* going to happen but ignores the risk and exposes the plaintiff to it." *Id.* (cleaned up and quotation omitted) (emphasis in original). Mere knowledge of general safety concerns, without knowledge of the particular danger of a specific task assigned, does not rise to the level of deliberate indifference. *See Collins*, 503 U.S. at 128 (rejecting the argument that failure to train or warn employees of known risks of general harm rises to conscience-shocking behavior capable of sustaining a constitutional claim); *Derosiers*, 2026 WL 1483497, at *6 (concluding that allegations that government employer "had continued to assign Plaintiff certain tasks after Plaintiff raised safety concerns . . . ring closer to a claim that Defendants failed to maintain 'minimal levels of safety and security' [quoting *Collins*, 503 U.S. at 129] than to a claim that Defendants' affirmative conduct placed Plaintiff in danger[.] [quotation omitted].").

Here, Defendants could only have known of a generalized risk of safety hazards in the workplace, which does not equate to deliberate indifference. Plaintiff alleges that Defendants were warned "of the training deficiencies within [AED]" and "deliberate[ly]" chose "to allocate available funds elsewhere." Complaint, ¶¶ 33, 35. What Defendants did not know, even according to the Complaint, was that the grenade that killed Detective Lemus was live ordnance. *Id.*, ¶¶ 55, 56, 58, 59. Plaintiff, moreover, does not allege that Defendants intended to expose Detective Lemus to the particular risk of the grenades exploding or otherwise knew that the explosion was going to happen while ignoring the risk. *See Patel*, 648 F.3d at 976. (applying the standard for deliberate indifference to dismiss state-created danger where the defendant did not intend to expose the plaintiff to a risk or otherwise did not know that something was going to happen, nevertheless ignoring the risk). *Cf. Coby v. City of Tombstone*, No. CV-25-00226-TUC-JGZ, 2025 WL 3267904, at *6 (D. Ariz. Nov. 24, 2025) (finding deliberate indifference in case of police canine biting municipal employee where "city officials *knew* the . . . dog was dangerous . . . [and thus] the Court could infer those officials actually intended to expose Plaintiff to *that danger*[]") (emphasis added). Defendants therefore did not act with deliberate

indifference, and the state-created danger exception does not apply. *See Herrera v. Los Angeles Unified. Sch. Dist.*, No. SACV-17-00069-JVS-KESx, 2018 WL 3816741, at *9 (C.D. Cal. July 3, 2018), aff'd, 18 F.4th 1156 (9th Cir. 2021) (granting summary judgment to defendant who, knowing that pool carried risk of autistic student drowning, was not deliberately indifferent because defendant was not aware of any "immediate danger," believing the student to be changing in the locker room).

**2. Plaintiff's Allegations Are Insufficient to Support a *Monell* Claim.**

The Complaint fails to establish that the municipal defendants' conduct was unconstitutional and amounted to official government policy with the force of law, deliberately indifferent to the rights of others. Local governments are liable for their own illegal acts but are not vicariously liable for the acts of employee officers. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. 658, 694 (1978). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove that (1) the plaintiff possessed a constitutional right of which [they were] deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotations and citations omitted).

Plaintiff alleges the existence of four County policies that inflicted injuries on Victor Lemus and herself: (1) the policy of defunding AED; (2) the custom of assigning untrained personnel to bomb squad duties; (3) a failure to train; and (4) the custom of taking and sharing unauthorized photographs. Complaint, ¶ 93. None of the allegations, however, reflect actual, unconstitutional polices in place or customs with the force of law. The *Monell* claims against the municipal defendants must therefore be dismissed.

**a. The allegations do not reflect deprivations of constitutional rights.**

As argued above, allocating municipal funds between various departments, transferring an employee from one dangerous department to another, and training employees to navigate hazardous conditions implicate concerns of negligence and good governance. *See* Complaint, ¶ 93. These concerns are political, not constitutional. *See Collins*, 503 U.S. at 128–29 ("Decisions concerning the allocation of resources to individual programs . . . and to particular aspects of those programs, such as the training . . . of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges . . . .").

Moreover, Plaintiff conflates a government employee's interest in being trained to avoid workplace hazards with *Monell* liability for the custom of failing to train municipal officers to avoid depriving third parties of constitutional rights. But a municipality's training regime cannot be both the constitutional violation itself (Complaint, ¶ 91) and the custom showing that constitutional violations occur (¶ 93). *Compare Connick*, 563 U.S. at 61 ("To satisfy [§ 1983], a municipality's failure to train its employees . . . must amount to deliberate indifference to the rights of *persons with whom the untrained employees come into contact*.") (cleaned up and quotation omitted) (emphasis added) *with Collins*, 503 U.S. at 128 ("We also are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."). Accordingly, none of these proposed policies implicate a constitutional right and therefore cannot support a *Monell* claim.

Likewise, Officer Giandomenico's alleged photography of the decedents' bodies does not violate their family's constitutional rights under the factual allegations pled. "The Constitution protects a parent's right to control the physical remains, memory and images of a deceased child against unwarranted *public exploitation* by the government." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (emphasis added). The

concern of public exploitation was essential to the *Marsh* court's determination of the substantive due process right. *See id.* at 1155 ("[P]ublic display of death images are the kind of conduct that is likely to cause the family profound grief and therefore 'shocks the conscience' . . . .") (citing *Rocin v. California*, 342 U.S. 165, 172–73 (1952)). The *Marsh* court therefore expressly limited its holding to publication of the images. *See id.* at 1155 n. 3 ("Only [the officer's] attempt to publish the autopsy photograph is sufficiently shocking to violate Marsh's substantive due process right."). Other courts, too, have recognized publication as an essential component of the *Marsh* decision. *See Olejnik v. England*, 147 F. Supp. 3d 763, 777 (W.D. Wis. 2015) ("The Ninth Circuit [in *Marsh*] . . . recogniz[ed] that family members have a well-established common law privacy right to protect a loved one's death images from *publication*.") (emphasis added).

Here, Plaintiff does not allege that Officer Giandomenico published the death photos of Victor Lemus. *Cf. Marsh*, 680 F.3d at 1152 (stating that officer gave autopsy photograph of deceased victim to a newspaper and television station). The allegations do not state that the photographs were shared with news media or on social media or that the death images are accessible to the public in any way. As such, the alleged conduct cannot have been a constitutional violation justifying *Monell* liability for the municipal Defendants.

**b. The allegations do not identify policies amounting to deliberate indifference.**

Plaintiff's attempt to tie the tragic subject incident to longstanding policy of deliberate indifference is not supported by the facts alleged. An employee's isolated conduct does not reveal a municipal policy without some demonstration of the municipality's own deliberate misconduct. *See Bd. of Cnty. of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (concluding that identification of conduct merely attributable to a municipality was insufficient without demonstration that such conduct was deliberate). Rather, a municipal policy must be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for

establishing final policy with respect to the subject matter in question." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (internal citations omitted). And where a local government does not have a formal policy of depriving a party of constitutional rights, plaintiffs "must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal citation omitted). This custom, moreover, "must be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (quotation omitted). When courts have examined incidents to determine whether they may infer the existence of a policy, they have evaluated those incidents by "their similarity, their timing, and subsequent actions by the municipality." *J.M. by and Through Rodriguez v. Cnty of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018).

Plaintiffs allege no incidents in which defunding the AED, assigning untrained personnel to bomb squad duties, or inadequate training have deprived parties of constitutional rights. In fact, the formal policies adopted by the municipal defendants belie *Monell* liability. As alleged, LASD policy dictates that until personnel return from training on handling explosives, they cannot be in the presence of live ordnance. Complaint, ¶¶ 32, 48. Plaintiff fails to allege *any* prior incidents of untrained personnel in the presence of live ordnance to nullify LASD's formal policy.

Likewise, Giandomenico's alleged actions do not evince a municipal policy. Plaintiff points to the "Kobe Bryant Act" and the aftermath of a lawsuit in 2020 in which LASD officers were alleged to have taken photographs of decedents, as evidence of a longstanding custom. *Id*, ¶ 70. But LASD's subsequent actions indicate that LASD expressly disclaimed this alleged custom. LASD adopted a formal policy prohibiting death photographs. *Id.* Defendant Luna declared his opposition to death photographs as a policy platform in his 2022 election campaign, stating that they were "not acceptable under any circumstances." *Id.,* ¶ 71.

Plaintiff alleges no facts to contradict this formal policy. Instead, she relies on a ratification theory, alleging that Defendant Luna ratified Giandomenico's actions, by "promoting Giandomenico, failing to discipline him, and failing to confiscate his cell phone or contain the dissemination of images." *Id.*, ¶ 93. "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it." *Puente v. City of Phoenix*, 123 F.4th 1035, 1066 (9th Cir. 2024) (quotation omitted). "Ratification generally requires more than acquiescence, and a mere failure to discipline does not amount to ratification of allegedly unconstitutional actions." *Dodge v. Evergreen Sch. Dist. No. 114*, 56 F.4th 767, 788 (9th Cir. 2022) (cleaned up and quotations omitted).

There are no facts alleged to support ratification. Even Giandomenico's promotion does not permit the inference of Luna's approval of Giandomenico's actions alleged here, as the Complaint implies that Luna promoted Giandomenico *before* the death of Victor Lemus. *Compare* Complaint, ¶ 71 ("Luna promoted Giandomenico to command rank") *with id.*, ¶ 69 (describing Giandomenico as a "Commander" at the time he allegedly took the photographs of Victor Lemus). Consequently, Plaintiff fails to identify a policy through custom or ratification theories to contradict the established policy against photography of the deceased.

Because Plaintiff's allegations to not permit the plausible inference that any of the proposed municipal conduct deprived Plaintiff of her constitutional rights or even constituted official policy with the force of law, the municipal defendants *cannot* be liable under a *Monell* theory.

**3. The Claims Premised on Familial Association Do Not Implicate an Enforceable Due Process Right.**

Historically, the Ninth Circuit has recognized a due process right permitting a child to seek damages under Section 1983 for a state actor's conduct that incidentally interferes with her familial relationship with a parent. *Smith v. City of Fontana*, 818 F.2d 1411, 1417–20 (9th Cir. 1987). Since *Smith*, however, the Supreme Court has required that,

before a substantive due process right can be recognized, courts must first conduct a rigorous historical analysis to determine whether the right is "objectively, deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 721.

In the wake of *Glucksberg*, other circuits have reevaluated their precedents to hold that due process does not protect a child's parental companionship interest from state action not directed at that interest, explicitly rejecting the holding of *Smith* for the directives of *Glucksberg*. *See Chambers v. Sanders*, 63 F.4th 1092, 1097–99 (6th Cir. 2023). The Ninth Circuit, however, "has never done the requisite substantive due process analysis required under *Glucksberg* to determine whether a child possesses a constitutionally protected parental companionship interest." *Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790, 816 (9th Cir. 2025) (Nelson, J., concurring in part and dissenting in part).

Accordingly, the right Plaintiff asserts to enable her recovery under Section 1983 in this case is not recognized under the Constitution, and the claim must therefore be dismissed. *See Garcia v. Benov*, 715 F. Supp.2d 974, 996 (C.D. Cal. 2009) ("When circuit authority is overruled by the Supreme Court, a district court . . . is no longer bound by that authority, and need not wait until the authority is also expressly overruled by an en banc panel.").

**4. Qualified Immunity Bars any Imposition of Liability on Luna.**

"Qualified Immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Regino v. Staley*, 133 F. 4th 951, 962 (9th Cir. 2025) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017)). A right is clearly established "when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7 (2015)). Moreover, for a constitutional right to be "clearly established," "existing precedent must have placed the . . . constitutional question *beyond debate*." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th

Cir. 2018) (emphasis added) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)).

Here, Defendant Luna has immunity from suit because his alleged actions do not violate any clearly established right. Even if the facts alleged had stated a plausible claim for state-created danger liability, the specific facts in the context of this case would not have clearly established that Luna's conduct violated a clearly established right beyond debate. There are no cases establishing constitutional liability for decisions to allocate municipal funds in specific ways, to assign untrained employees to a generally hazardous department, or to maintain particular outdated equipment not known to be faulty. *Cf.* Complaint, ¶ 91; *Collins*, 503 U.S. 115. There are certainly no analogous cases imposing liability for injuries inflicted by a dangerous item or condition, in which an officer did not know of the specific danger. *See Kisela*, 584 U.S. at 106–108 (finding no analogous cases on specific issue of excessive force to justify denial of qualified immunity).

Likewise, Luna's alleged actions interfering with the child companionship interest could not have violated a right clearly established beyond debate, as that interest is still the subject of debate. *See Est. of Hernandez*, 139 F.4th at 813 (2025) (Nelson, J., concurring in part and dissenting in part) ("Our [child companionship] precedents have never been justified under the proper *Glucksberg* framework"). In sum, even if the Complaint had alleged specific, factual allegations necessary to state a claim for state-created danger or interference with familial association against Luna, specifically, he would be entitled to qualified immunity.

///

///

**V. CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint as to Defendants Luna, the County, and LASD pursuant to Rule 12(b)(6). Further, the court should dismiss without leave to amend because amendment would be futile. *See Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 824 (9th Cir. 2002).

Dated: August 26, 2026

ADAMS, DUERK & KAMENSTEIN LLP

By ____________________________

ADAM D. KAMENSTEIN
ALEC JOHNSON
JONATHAN K. RAMLER
Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, and ROBERT LUNA

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles, Los Angeles County Sheriff's Department, and Robert Luna certifies that this brief contains 6,555 words, which complies with the word limit of L.R. 11-6.1

DATED: August 26, 2026

**ADAMS, DUERK & KAMENSTEIN LLP**

By: ______________________
Adam D. Kamenstein

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed a copy of this document (and all attachments) via CM/ECF, which will cause a copy to be served on all counsel of record.

Dated: August 26, 2026

ADAMS, DUERK & KAMENSTEIN LLP

By ______________________

ADAM D. KAMENSTEIN
Attorney for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, and ROBERT LUNA