Adam D. Kamenstein (SBN 225921)
*adam.kamenstein@adkfirm.com*
Alec Johnson, (SBN 270960)
*alec.johnson@adkfirm.com*
Jonathan K. Ramler (SBN 362590)
*jack.ramler@adkfirm.com*
ADAMS, DUERK & KAMENSTEIN LLP
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 408-4085

Attorneys for Defendants
County of Los Angeles,
Los Angeles Sheriff's Department,
and Robert Luna

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALEXIS LEMUS, an individual

Plaintiff,

vs.

COUNTY OF LOS ANGELES, a public entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; ROBERT G. LUNA, in his individual and official capacities; THOMAS GIANDOMENICO, individually and in his official capacity as a Commander of the Los Angeles County Sheriff's Department; and DOES 1 through 50, inclusive,

Defendants.

Case No. 26-cv-09259-JAK-MAR

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Hearing: Nov. 2, 2026
Time: 8:30 a.m.
Courtroom: 10C

Defendants County of Los Angeles, ("County"), the Los Angeles County Sheriff's Department ("LASD") (collectively "County Defendants"), and Robert Luna submit this reply brief in support of their Motion to Dismiss (Dkt. 6, "Motion"), filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and in response to Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. 15, "Opposition" or "Opp.").

## I. INTRODUCTION

Plaintiff's remedy for the tragedy that befell Victor Lemus is workers' compensation, not common law or constitutional claims. Notwithstanding the rhetoric of the Opposition, the Complaint does not state facts sufficient to overcome the clear application of the exclusivity rule. Likewise, Plaintiff has no recourse under Section 1983 because it is well established that this statute is not a platform for negligence claims. Because these defects are matters of law, amendment would be futile, and the Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Workers' Compensation Exclusivity Bars Plaintiff's State-Law Claims.

California's Workers' Compensation Act is not a bar to recovery, as the Opposition suggests. Rather, the statute rests upon a "presumed compensation bargain," in which an employee can obtain ready access to relief without needing to establish fault, in exchange for "giv[ing] up the wider range of damages potentially available in tort." *Wilson v. Southern California Edison Co.*, 234 Cal.App.4th 123, 141–42 (2015). Exceptions to the law are limited to egregious conduct, such as (1) the fraudulent concealment of an employee's injury that itself aggravates that injury or (2) criminal conduct with the specific intent to injure the employee. Plaintiff's allegations do not fit either exception and therefore fail to state a plausible claim to relief.

#### 1. Fraudulent Concealment

In seeking to evade the exclusivity rule, Plaintiff first attempts to expand the scope of the fraudulent concealment exception through a novel definition of "injury" that is not supported by caselaw. Opp. at 6. To allege fraudulent concealment, a plaintiff must plead

facts suggesting that "(1) the employer knew the plaintiff had suffered a work-related injury; (2) the employer concealed that knowledge from the plaintiff; and (3) the injury was aggravated as a result of such concealment." *Jimenez v. Mrs. Gooch's Natural Food Markets, Inc.*, 95 Cal.App.5th 645, 658 (2023). Allegations do not support fraudulent concealment where "the nature of the accident must have apprised the decedent that he was injured." *Id.*

Here, there was no injury until the grenade detonated and killed Mr. Lemus. Yet, the Opposition argues that the first element for fraudulent concealment is met because "Defendants knew the facts establishing" Detective Lemus's "ongoing injurious exposure." Opp. at 6. Plaintiff relies on *Johns-Manville*, 27 Cal.3d at 477, "where the employer knew the employee was being injured by his working conditions and concealed that knowledge." Opp. at 6. But the fatal flaw in Plaintiff's argument is conflating exposure to danger with actual injury. Cases applying the fraudulent concealment exception typically involve exposure to toxic chemicals, which continuously injure an employee and can be aggravated through an employer's prolonged concealment of the injury. *See Johns-Manville*, 27 Cal.3d 465; *Foster v. Xerox Corp.*, 40 Cal.3d 306 (1985).

But exposure to the possibility of injury—as opposed to actually inhaling substances that injure—is not enough to fit the fraudulent concealment exception. In *Stalnaker v. Boeing Co.*, 186 Cal.App.3d 1291 (1986), the court recognized this distinction. There, the plaintiff brought a wrongful death suit against a government contractor, which knew of an unexploded grenade beneath a range's surface and, despite that knowledge, sent the decedent on the range where the grenade exploded and killed him. The court concluded that the fraudulent concealment exception was inapplicable because the grenade explosion was "not an aggravation of a work-related injury but the injury itself." *Id.* at 1300. *See also Jimenez*, 95 Cal.App.5th at 658. Like *Stalnaker*, the grenade explosion here that killed Mr. Lemus was not the aggravation of a prior known injury but the injury itself. Accordingly, Plaintiff has failed to state facts permitting an inference of fraudulent concealment.

### 2. The *Fermino* Exception Covering Criminal Conduct

The Opposition further argues that standard employment conduct can be construed to support an exception created to cover criminal conduct by an employer. Opp. at 7. But as articulated in *Fermino v. Fedco, Inc.*, this exception requires criminal conduct by the employer that exceeds the limits of the compensation bargain. 7 Cal.4th 701, 708 (1994). Such conduct must be a crime "against the employee's person by means of violence and coercion." *Id*. at 723, n. 7. Further, the employer must have "the specific intent to injure the employee." *Arendell v. Auto Parts Club, Inc.*, 29 Cal.App.4th 1261, 1265 (1994) (quotation omitted). Actions that are a normal part of the employment relationship do not support the exception, even when there is an allegation of nefarious intent. *See Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal.4th 800, 822 (2001) ("[T]he critical issue is whether the alleged acts, *bereft of their motivation*, can ever be viewed as a normal aspect of the employer relationship." (emphasis added; quotation omitted)); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987) (characterizing unfair demotion practices, promotions, frictions in negotiations and criticism of work practices as within the compensation bargain).

Here, the Complaint does not allege criminal conduct, an intent to injure, or any conduct outside the employment relationship. Indeed, Plaintiff's state law cause of action is for *negligence*, not an intentional tort. *See Ward v. Aramark, Inc.*, No. C98-3334 FMS, 1999 WL 38945, at *2 (N.D. Cal. Jan. 28, 1999) (applying exclusivity rule to dismiss claim for negligence with prejudice because "Defendant[s] cannot simultaneously act negligently and intentionally"). Further, Defendants' alleged conduct is squarely within the employment relationship. The employer actions cited are: (1) transfer of an employee between departments; (2) management of Mr. Lemus's work assignments; and (3) funding allocations. Opp. at 7. These standard employment actions are well within the compensation bargain as a matter of law, permitting no inferences of violent, criminal coercion or specific intent to injure. *See Vacanti*, 24 Cal.4th at 822. Accordingly, the *Fermino* exception is inapplicable. *See Nelson v. Am. Cas. Co. of Reading Pennsylvania*,

No. CV-08-001943-SJO-Ex, 2008 WL 11338483, at *4 (C.D. Cal. June 2, 2008) (Dismissing claims with prejudice "[b]ecause the acts and motives that establish the elements of Plaintiffs' causes of action do not fall outside the compensation bargain, and because there is no plausible basis for Plaintiffs to assert an exception to the exclusivity bar") (quotation omitted).

**B. Plaintiff's Negligence Claims Are Not Civil Rights Violations.**

Negligent acts or omissions can never constitute a claim for a Constitutional tort. *See Daniels v. Williams*, 474 U.S. 327, 332 (1986). But Plaintiff here tries to dress up negligence allegations in the clothing of constitutional violations. *Compare* Complaint, ¶ 79 ("Defendants . . . owed Detective Lemus a duty to exercise reasonable care in . . . the assignment of personnel to hazardous duties, the provision of training . . . adequate to the known hazards of explosives work, [and] the inspection, maintenance, and replacement of diagnostic and protective equipment[.]") *with* Complaint, ¶ 91 (ascribing "deliberate indifference" to Luna's assignment and training of Lemus, as well as provision of unreliable equipment). Plaintiff's efforts to recast their allegations into claims of state-created danger, *Monell* liability, and deprivation of familial association are unavailing and barred as to Defendant Luna on the grounds of qualified immunity.

**1. The State-Created Danger Doctrine Does Not Apply.**

A state's negligently created danger is not a constitutional violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992). Plaintiff contends that Lemus was harmed due to a state-created danger, but to support the application of this doctrine, Plaintiff must plausibly allege both affirmative conduct by Defendants placing Lemus in danger and deliberate indifference to a known danger. *See Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023). Despite the representations in the Opposition, the Complaint does not plausibly allege either.

Indeed, the Opposition's discussion of affirmative acts is intentionally misleading. Opp. at 9–10. The Complaint does not allege that Luna or County Defendants handled the grenade, pronounced it inert, transported it to the SEB facility, or "misrepresented" the

grenade's inertia. The Complaint alleges that LASD employees took these actions. *See* Complaint, ¶ 54. But a municipality is not vicariously liable under Section 1983 for the actions of its employees. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). And the actions of the "deputies" are not affirmative acts taken by the Defendants here.

Further, the Complaint plainly states that untrained personnel were not permitted by the Municipal Defendants to be in the presence of live grenades (Complaint, ¶ 48) and that the only employment directive on the fatal day was to support a video shoot (*Id.*, ¶ 57). These factual allegations do not plausibly permit the inference that Defendants directed or permitted Lemus to be in the presence of the live grenade that killed him. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The only affirmative act plausibly alleged to have been taken by Defendants is the transfer of Lemus to AED 13 months before the incident. But this transfer is, at most, a negligent act. *See* Complaint, ¶ 79. The transfer itself did not create the danger of the exploding grenade any more than the City of Harker Heights created the danger of the plaintiff asphyxiating in a sewer by failing to warn or properly train him on work in foreseeably hazardous spaces. *Collins*, 503 U.S. 115; *see also Desrosiers v. Garcia*, No. 26-CV-02111, 2026 WL 1483497, at *6 (S.D. Cal. May 27, 2026) ("Plaintiff's allegations that 'SDSU supervisors' had continued to assign Plaintiff certain tasks after Plaintiff raised safety concerns . . . ring closer to a claim that Defendants failed to maintain 'minimal levels of safety and security,' *Collins*, 503 U.S. at 129, than to a claim that Defendants' 'affirmative conduct' placed Plaintiff in danger [citation].").

Plaintiff also asserts that "the danger was directed at an identified and specific set of victims: the three detectives." (Opp. at 10). But the Complaint contains no allegations supporting this assertion of particularized harm. The alleged funding and training priorities of the department were generalized to all personnel. Danger from ordnance mistakenly determined inert could foreseeably injure any person in the public during

///

transport or any employee or visitor to the SEB. In sum, Plaintiff can point to no affirmative act of Defendants that created and directed danger specifically at Mr. Lemus.

As to deliberate indifference, a state actor is deliberately indifferent only when it "knows that something is going to happen but ignores the risk." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (quotation omitted). Plaintiff asserts knowledge of potential danger stemming from insufficient funding, training, and equipment suffices for deliberate indifference. (Opp. at 11). But again, this theory conflates the potential for workplace danger and knowledge of specific, imminent danger, which are factually distinct. *Cf. L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) ("*Grubbs II*") (stating the rule that deliberate indifference "require[s] *actual* knowledge . . . of *impending* harm") (cleaned up and emphasis added).

In *Collins*, for example, the plaintiff alleged that the city had a policy of not training its employees about the inherent danger of their work, not providing safety equipment, and not warning employees "about *known* risks of harm." 503 U.S. at 117–18 (emphasis added). The Court affirmed that these allegations failed to state a federal civil rights claim. *Id*. at 117. Specifically, the Court noted that the plaintiff did not allege that when the supervisor instructed the employee to go into the particularly dangerous sewer, "the supervisor knew . . . that there was a significant risk that he would be injured." *Id.* at 125–26. This distinction approximates the boundary of the state-created danger doctrine. *See L.W. v. Grubbs*, 974 F.2d 119, 122 (9th Cir. 1992) ("*Grubbs I*") (quoting *Collins*). Where a government employer knows of a specific danger of injury but nevertheless acts to place an employee at imminent risk of that danger, an action for state-created danger may exist. *See id.* (finding state-created danger where employer knew that that a perpetual rapist was dangerous but nevertheless directed Plaintiff to work with him alone); *Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016) (finding state-created danger where employer knew of the presence of mold in a specific facility and its adverse effect on employee's health but nevertheless kept the employee exposed to the harmful condition).

In contrast, where the state actor does not know of any specific, immediate danger, government actions that lead to harm are not considered state-created danger. *See Collins*, 503 U.S. at 125–26; *Patel*, 648 F.3d at 975–76 (finding no state-created danger where, despite knowing of past incidents and general danger, state actor's neglect in supervising disabled student was not deliberately indifferent because state actor did not know of any immediate danger of sexual assault); *Herrera v. Los Angeles Unified Sch. Dist.*, No. SACV-17-00069-JVS-KESx, 2018 WL 3816741, at *9 (C.D. Cal. July 3, 2018), aff'd, 18 F.4th 1156 (9th Cir. 2021) (finding no state-created danger where teacher knew of danger of disabled child drowning in pool but did not know of *impending* danger because he thought child was in locker room); *see also Desrosiers*, 2026 WL 1483497, at *5 ("An employer's failure to warn or train its employees about known hazards in the workplace does not support a substantive due process claim.").

The Opposition's appeal to *Polanco v. Diaz*, 76 F.4th 918, 928–29 (9th Cir. 2023), is unavailing. There, the defendants feigned ignorance of the risk that transferring infected inmates would have on prison employees. *Id.* But claims to ignorance were untenable given the universality of the Covid danger and the state prison health agency's warnings against transfers. *Id.* Thus, despite knowing the imminent danger of transferring infected inmates, prison officials nevertheless "went ahead with the transfer" and created danger with deliberate indifference. *Id.* at 928. From *Polanco*, the Opposition concludes that "disregarding expert warnings suffice[]" to establish deliberate indifference. Opp. at 11. But again, knowledge of a mere risk of generalized harm is not enough. The officials in *Polanco* were not deliberately indifferent because they knew that Covid was dangerous but rather because they knew that the affirmative act of transferring infected patients would expose employees to that danger. By contrast, while Defendants may have known of workplace safety deficiencies, they did not know of any specific, immediate danger stemming from their employees' disposition of the Santa Monica grenade, nor could they have intended to expose Lemus to that danger. As such, Plaintiff has failed to allege facts

///

plausibly suggesting deliberate indifference or affirmative conduct by Defendants, and the claim to a state-created danger is therefore unsupported.

**2. Plaintiff's Allegations Do Not Support *Monell* Liability.**

Municipalities are liable only for their own constitutional violations. *See City of Canton*, 489 U.S. at 385. While Plaintiff argues the Municipal Defendants' conduct amounted to constitutional violations (Opp. at 12–13), the Complaint fails to allege (1) facts sufficient to permit the Court to plausibly infer a constitutional violation occurred, (2) facts suggesting that Municipal Defendants were deliberately indifferent to the occurrence of a constitutional violation, or (3) facts suggesting that Municipal Defendants ratified Giandomenico's alleged conduct.

First, municipal decisions on funding, training, and personnel are not constitutional violations. *See Collins*, 503 U.S. 115; *Chase v. Cnty. of Nevada*, 81 F. App'x 92, 94 (9th Cir. 2003) ("Courts have repeatedly held that such resource allocation decisions, though they occasionally result in harm to individuals, do not rise to the level of a constitutional violation."). Moreover, the right to be free from public exploitation of images of a decedent requires publication, which the Complaint does not allege. *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012). The Opposition did not engage this argument beyond regurgitating the legal conclusion that Giandomenico shared the photographs "with others for no law enforcement purpose." (Opp. at 15). Nor does the Opposition engage with the Motion's distinction between a failure to train to safeguard workplace safety (*Collins*) and a failure to train employees to prevent those employees from violating others' constitutional rights (*Monell*). *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("[F]ailure to train . . . must amount to deliberate indifference to the rights of *persons with whom the untrained employees come into contact*") (emphasis added). As such, no constitutional violation has been clearly alleged.

Second, Plaintiff alleges no facts suggesting the Municipal Defendants were deliberately indifferent to a constitutional violation. The Opposition notes that a municipality may be liable for its "longstanding practice or custom which constitutes . . .

standard operating procedure." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (Opp. at 12). But neither the Complaint nor the Opposition allege facts showing such longstanding practices of deliberate indifference to the violation of rights of others. Plaintiff merely alleges "that the actual, operative practice was the opposite of the paper policy," and "untrained personnel" "were placed in the presence of unverified ordnance." (Opp. at 12). But Plaintiff cites no such instances permitting the inference that this custom existed. *Cf. Seever v. City of Modesto*, No. 121-cv-01373-JLT-EPG, 2022 WL 17418355, at *3 (E.D. Cal. Dec. 5, 2022) ("To evaluate whether a sufficient pattern of unconstitutional conduct exists, courts typically consider the number of [prior] incidents, the factual similarity of those incidents, their timing, and any subsequent action by the defendant"). Likewise, Plaintiff asserts that command staff treated the formal policy against death photography as a "dead letter" but has not provided factual allegations in support of the custom existing after the adoption of the formal policy. *Cf. H.L. v. Cnty. of Los Angeles,* No. 2:25-cv-05642-ODW, 2026 WL 146621, at *7 (C.D. Cal. Jan. 20, 2026) (concluding that plaintiffs failed to state a claim based on municipal custom where plaintiffs did not allege any facts to support the conclusory assertion).

Third, the Complaint's sole theory of ratification is that Luna ratified the death images "by promoting Giandomenico, failing to discipline him, and failing to confiscate his cell phone or contain the dissemination . . . ." (Complaint, ¶ 93). But ratification requires more than acquiescence and must show the policymaker's approval of both the employee's decision and the basis for that decision. *See Dodge v. Evergreen Sch. Dist. No. 114*, 56 F.4th 767, 788 (9th Cir. 2022). Failing to discipline or confiscate a cell phone does not show approval of Giandomenico's actions or the reason he acted. *See id.* Promotion could show approval, but as noted in the Motion, the Complaint establishes the promotion occurred before Lemus's death. No factual allegations therefore support a plausible inference of official ratification.

///

///

**3. The Ninth Circuit Has Not Reconsidered Familial Association.**

The existence of the child companionship right post-*Glucksberg* was not at issue in *Est. of Hernandez by and through Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025). Defendants cited to Judge Nelson's opinion in *Hernandez* to underscore their argument that the Ninth Circuit has not considered the directives of *Glucksberg* on their prior determination of a child companionship right. *See id.* at 812 (Nelson, J., concurring in part and dissenting in part) ("After [*Glucksberg*] our unreasoned decisions assuming such rights *require* reexamination.") (emphasis added). Defendants thus ask the Court to reexamine the child companionship interest in light of *Glucksberg*. Moreover, as a Ninth Circuit concurring opinion noted that reexamination of the interest was required in June 2025, the interest could not have been "beyond debate," and Luna is entitled to qualified immunity for all federal claims.

**4. Defendant Luna Is Entitled to Qualified Immunity.**

Finally, Plaintiff's assertion that *Polanco* "clearly established" that Luna's actions were unconstitutional is unavailing. Opp. at 15–16. Again, the state actor's affirmative act in *Polanco* was to transfer 122 prisoners with "high-risk medical conditions" at the height of COVID into the notorious incubator that was San Quentin prison. 76 F.4th at 923. This specific act created imminent danger of COVID-related deaths, and the state actor knew of the particular imminent danger posed. By contrast, Luna could not have understood from *Polanco* that his allocations of funding, training priorities, decisions not to upgrade equipment, or transfer of a veteran detective to be trained on the job violated a "clearly established" constitutional right. In fact, *Collins* would have justified reliance on its holding that maintenance of workplace safety is not a constitutional obligation. In sum, the issue was not "beyond debate." *See Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018). Accordingly, Defendant Luna is entitled to qualified immunity here.

## III. CONCLUSION

For the foregoing reasons, Defendants request dismissal of the Complaint with prejudice.

Dated: September 16, 2026

**ADAMS, DUERK & KAMENSTEIN LLP**

By: ______________________

ADAM D. KAMENSTEIN
ALEC JOHNSON
JONATHAN K. RAMLER
Attorneys for Defendants
COUNTY OF LOS ANGELES;
LOS ANGELES SHERIFF'S DEPT.;
and ROBERT LUNA

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles and Los Angeles Sheriff's Department certifies that this brief contains 3,479 words, which complies with the word limit of L.R. 11-6.1 and the ten-page limit set for reply briefs set by the Court's Standing Order for Civil Cases.

DATED: September 16, 2026 **ADAMS, DUERK & KAMENSTEIN LLP**

By: ______________________
Alec Johnson

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a copy of this document (and all attachments) via CM/ECF, which will cause a copy to be served on all counsel of record.

Dated: September 16, 2026

**ADAMS, DUERK & KAMENSTEIN LLP**

By: ______________________________
ALEC JOHNSON
Attorney for Defendants
COUNTY OF LOS ANGELES;
LOS ANGELES SHERIFF'S DEPT.;
and ROBERT LUNA